**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **BARK U, LLC**,<br>　　　　　*Plaintiff,*<br><br>　　　**v.**<br><br>**TERWISSCHA CONSTRUCTION, INC.,**<br>　　　　*Defendant.* | **Civ. No. 24-1508** |

**<u>MEMORANDUM</u>**

**Costello, J.**                                                                              **June 9, 2026**

　　　Plaintiff Bark U, LLC operates a pet daycare, boarding, training, and grooming service.

Defendant Terwisscha Construction, Inc. is a construction company specializing in building pet

daycare, boarding, training, and grooming facilities.  Plaintiff retained Defendant to plan and

design a larger facility to accommodate more animals.  The parties executed two contracts to

memorialize their relationship, the Preliminary Planning Agreement (the "PPA") and the Design

Development Agreement (the "DDA") (together, the "Agreements").  Plaintiff brought this

action for breach of contract, alleging that Defendant failed to perform its obligations under the

Agreements.  Defendant moved for summary judgment.  For the reasons that follow, the Court

will deny Defendant's motion.

**I.　　　BACKGROUND**

　　　**A.　　　The Agreements**

　　　The PPA is a one-page form that lists the scope of planning services that Defendant

would perform for Plaintiff.  ECF No. 29 at 6.  It provides that Defendant would undertake the

following:  "onsite visit with development consultant; a needs analysis based on your current or

future requirements; preliminary life-safety, accessibility (ADA) and local ordinance/code

review; preliminary floor plan derived from the needs analysis and onsite visit; programming matrix; estimated architecture/construction budget based on anticipated design and finish levels; demographics review; anticipated business performance; preliminary project schedule; review of financing options; [and] agreement for design development services." ECF No. 29-2 at 2. Plaintiff was required to pay Defendant $9,000 for these services. *Id.*

The PPA also includes a liability limitation provision below the signature line that states: "To the maximum extent permitted by law, Terwisscha Construction Inc.'s total liability to [OWNER] for any and all injuries, claims, losses, expenses, damages, or claim expenses arising out of this Agreement, from any cause or causes, shall not exceed the total amount of Terwisscha Construction's fee." *Id.*

The DDA is another one-page form that lists the scope of design services that Defendant would perform for Plaintiff. ECF No. 29 at 6. It provides that Defendant would undertake the following: "integration of life, safety, and accessibility (ADA) codes into the floor plans; floor plans with interior elevations completed through design development/permit stage; site plan conforming to local ordinances with rezoning and various application assistance; structural, mechanical, electrical, and plumbing documents; interior design concepts to convey proposed fixtures, furnishings, and finishes; equipment procurement analysis; consulting with owner's civil engineer for site development if required by building official; detailed project schedule; assistance in providing documentation for final financing submittal package; and TWC agreement for final construction documents and construction services." ECF No. 29-3 at 2. Plaintiff was required to pay Defendant $190,000 for these services. *Id.* The DDA incorporates the PPA by reference. *Id.*

B.    The Alleged Breaches and Damages

Plaintiff brought this action for breach of contract, alleging that Defendant failed to perform its obligations under the Agreements. *See generally* ECF No. 1. Plaintiff specifically alleges that Defendant breached the Agreements in the following ways: failing to perform an onsite visit prior to undertaking the project; consistently recommending "products and finishes that were unsuitable" for the new facility "either due to their physical characteristics or pricing"; failing to prepare "complete, accurate, and code-compliant electrical, mechanical, plumbing, and engineering drawings" for the project; failing to submit "correct and complete permit applications" with the relevant government agencies; failing to design an "appropriate" HVAC system for the facility "within reasonable budget"; and repeatedly failing to "prepare and divide deliverables necessary" for the project "in a timely manner." ECF No. 29 at 8-9.

Plaintiff now seeks to recoup the $199,000 it paid to Defendant under the Agreements, for which Plaintiff claims it "received no benefit whatsoever due to Defendant's failure to perform the contracted-for services." *Id.* at 11. Plaintiff also seeks damages for lost profits. According to Plaintiff, it told Defendant it needed to be able to operate out of the new facility starting in August of 2023. *Id.* at 19-21. The new facility was not actually ready for use until March of 2024. *Id.* at 21. Plaintiff argues that Defendant's breaches caused this delay and now seeks $620,147 in damages, which is the amount Plaintiff alleges it would have made in additional profits had it been able to operate in the larger facility starting in August of 2023 as expected. *Id.* at 10, 19-21.

C.    Defendant's Motion

Defendant moved for summary judgment. *See generally* ECF No. 28. In Defendant's view, the services listed in the Agreements constitute an exhaustive list of its duties to Plaintiff. *See* ECF No. 28-1 at 5-6. Defendant maintains that it fully performed all these duties by

3

providing Plaintiff with "structural, mechanical, electrical, and plumbing plans for the build," which another contractor used to complete the actual construction. *Id.* at 9. Defendant argues that none of the alleged "breaches" identified by Plaintiff violate any of the plain terms of the Agreements and characterizes them as mere "dissatisfaction" with certain choices made by Defendant about how to execute the plans. *See id.* at 9-18.

Plaintiff opposed the motion. *See generally* ECF No. 29. In Plaintiff's view, "the Agreements bear little resemblance to comprehensive fully integrated contracts" because each "is comprised of a one-page summary document that provides very little information as to what the parties' respective rights and obligations are." *Id.* at 14-15. Rather, "the overall purpose of the Agreements was for Defendant to undertake and perform everything necessary to get the projects to at least the construction phase, based on Plaintiff's needs[.]" *Id.* at 15. Thus, "all tasks and deliverables reasonably necessary to accomplish the purpose of the Agreements . . . fell within [their] scope, whether or not a particular task or deliverable was specifically enumerated therein." *Id.*

That meant designing the project "in a way that worked for Plaintiff's business," recommending "products and finishes that were suitable for Plaintiff and were within Plaintiff's budget," preparing "all of the necessary plans and drawings in a manner that could actually be used," and designing the HVAC system "in a financially viable manner." *Id.* at 15-16. This also included Defendant "performing its obligations in a timely manner." *Id.* at 17. To Plaintiff, "timely" meant completing the plans and designs with enough time for construction to be completed by August of 2023.[1] Plaintiff argues that, based on this understanding of the

---

[1] The parties agree, however, that there were no explicit deadlines in the Agreements. *Id.*

Agreements, there is sufficient record evidence from which a jury could reasonably conclude that Defendant breached its obligations. *Id.* at 8.

## II.   LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine." *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

The Court does not weigh evidence or make credibility determinations at the summary judgment stage. Rather, it simply determines "whether there is a genuine issue for trial." *Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a triable issue; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.    ANALYSIS

To establish a claim for breach of contract under Pennsylvania law,[2] a plaintiff must show (1) the existence of a contract; (2) a breach of one or more of the duties imposed by the contract; and (3) damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Only the second and third elements are in dispute here. *See* ECF No. 28-1 at 7-16. Accordingly, Plaintiff must demonstrate the existence of a genuine dispute of material fact as to breach and damages to survive summary judgment. *See PetroChoice Holdings, Inc. v. Orobono*, 19cv6152, 2022 WL 138008, at *6 (E.D. Pa. Jan. 14, 2022) (citing *Siematic Mobelwerke GmbH & Co. v. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 685 (E.D. Pa. 2009)).

### A.    Breach

"When interpreting a contract, the court begins with the 'firmly settled' principle that 'the intent of the parties to a written contract is contained in the writing itself.'" *Tax Matrix Tech.,*

---

[2] Federal courts sitting in diversity apply the substantive law as decided by the highest court of the state whose law governs the action. *Erie R.R. Co. v. Tompkins*, 302 U.S. 64, 78 (1938). The Agreements do not indicate which state's law governs the contracts. *See generally* ECF No. 29-2 (PPA); ECF No. 29-3 (DDA). However, the parties agree that Pennsylvania law is controlling. *See* ECF No. 28-1 at 4-5, 13 (citing to Pennsylvania contract law); ECF No. 29 at 14, 16 (same); *see also* ECF No. 40 at 4:12-16 (parties confirming at oral argument that Pennsylvania law governs).

*LLC v. Wegmans Food Markets*, 154 F. Supp. 3d 157, 173 (E.D. Pa. 2016) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993)).

To that end, the Court must interpret contractual terms "to give effect to the parties' 'objective manifestations of their intent' rather than attempt to ascertain their subjective intent" by turning to extrinsic evidence from prior to/contemporaneous with the formation of the contract ("parol evidence"). *Griesmann v. Chem. Leaman Tank Lines, Inc.*, 776 F.2d 66, 72 (3d Cir. 1985) (quoting *Mellon Bank, N.A. v. Aetna Bus. Credit*, 619 F.2d 1001, 1009 (3d Cir. 1980)). There are few exceptions to the general rule barring the use of parol evidence to interpret the meaning of a contract. "Only if the terms used are ambiguous, *or* if the contract is not fully integrated, should the trial judge allow the finder of fact to consider evidence that might vary or add to the contract's express terms." *Id.* (emphasis added) (internal citations omitted).

      1.     <u>Ambiguity</u>

"Where the words of a contract are clear and unambiguous, its meaning must be determined by its contents alone, without reference to extrinsic aids or evidence." *Tax Matrix Tech.*, 154 F. Supp. 3d at 173 (citations omitted); *accord Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). Generally, interpreting the terms of a written agreement is a task for the Court. *Id.* (citing *Allegheny v. Int'l v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994)). In contrast, where the language of a contract is ambiguous, a court "may look outside the four corners of a contract and receive extrinsic evidence . . . to resolve the ambiguity." *Id.* (quotations omitted). Language is ambiguous if it "is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quotations omitted). Unless the extrinsic evidence is "conclusive," resolving the ambiguity is a task for the factfinder. *Id.*;

*accord Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001); *Cmty. Coll. of Beaver Cnty. v. Cmty. Coll. of Beaver Cnty., Soc. of the Fac.*, 375 A.2d 1267, 1275 (Pa. 1977).

Defendant argues that the language of the Agreements is "plain" and unambiguous. *See* ECF No. 32 at 8 (arguing that Plaintiff "does not even attempt to provide language that is susceptible to different interpretations"). Thus, according to Defendant, the Court cannot look outside of the four corners of the Agreements to evaluate Plaintiff's breach of contract claim. ECF No. 28-1 at 11. Defendant is right that Plaintiff does not identify any specific language as ambiguous. All Plaintiff says on this issue is that, "[t]o the extent there is any ambiguity as to Plaintiff's rights or Defendant's obligations under the Agreements, such ambiguity is to be resolved against Defendant[.]" ECF No. 29 at 15.

However, Plaintiff's position is that the Agreements were intended to reflect the parties' broader intentions and goals. That is, for Defendant to perform a variety of services to Plaintiff's satisfaction, including but not limited to the ones explicitly listed in the PPA and DDA. *Id.* at 14-15 ("Each Agreement is comprised of a one-page summary document that provides very little information as to what the parties' respective rights and obligations are."); *see also id.* at 15 ("all tasks and deliverables reasonably necessary to accomplish the purpose of the Agreements . . . fell within [their] scope, whether or not a particular task or deliverable was specifically enumerated therein"). This is an argument that the Agreements are not fully *integrated*—which is a distinct issue from ambiguity. *See Mellon Bank*, 619 F.2d at 1010 n.9 (the "issue of ambiguity must be carefully distinguished from the issue of 'integration' which arises when evidence is introduced to vary or add to the unambiguous written terms of a contract on the ground that the evidence is admissible because the written contract is not fully integrated"); *see also* ECF No. 40 at 7:2-17 (Plaintiff confirming at oral argument that its position is that the Agreements are not integrated

contracts, not that the language is ambiguous).  The Court will accordingly turn to the integration analysis.

2.     Integration

Whether a writing is an integrated final agreement is a question of law for the Court. *Mellon Bank Corp. v. First Union Real Est. Equity & Mortg. Invest.*, 951 F.2d 1399, 1405 (3d Cir. 1991).  "The issue becomes whether the proffered evidence is extrinsic to the integrated written contract . . . or whether the proffered evidence is part and parcel of the entire contract of which the written document is only a part." *Mellon Bank*, 619 F.2d at 1010 n.9.  If the latter, then the evidence is admissible. *Id.*  If the former, the evidence is inadmissible. *Id.; see also Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, 09cv5099, 2012 WL 6194211, at *8 (E.D. Pa. Dec. 11, 2012) ("Where the court determines that a particular writing represents the parties' entire agreement, 'previous oral or written negotiations or agreements involving the same subject matter' are inadmissible to explain, vary or supplement the terms of the written agreement." (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004)).

To determine whether the proffered evidence is "part and parcel of the entire contract," *Mellon Bank*, 619 F.2d at 1010 n.9, courts consider "whether the parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made." *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1053 (E.D. Pa. 1993).  "If they relate to the same subject matter and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing." *Id.* (citing *Mellon Bank*, 951 F.2d at 1405 and *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 995 (3d Cir. 1987)).  Put another way, "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any

9

uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." *Gianni v. R. Russel & Co.*, 126 A. 791, 792 (Pa. 1923) (quotations omitted).

The Court agrees with Plaintiff and finds that the Agreements are not final integrated contracts between the parties. The PPA and DDA are one-page, informal documents listing basic services that Defendant was to provide for Plaintiff. They lack any details about how Defendant was supposed to provide those services. Nor do they contain details about Plaintiff's rights under the Agreements. In short, the Agreements bear little resemblance to standard commercial contracts.

Courts in this Circuit have found that contracts were not integrated under similar circumstances. For instance, *Miracle Industries, Inc. v. Getty Petroleum Corporation* involved contracts for the defendant to provide public pay telephone services to the plaintiff for its stores. 90cv4283, 1992 WL 121723, at *1 (E.D. Pa. May 20, 1992). The plaintiff alleged that the contracts contemplated that the defendant would exclusively provide services to Plaintiff's stores. There was not an exclusivity provision in the written agreements, so the dispositive issue was whether the agreements constituted final integrated contracts. *Id.* at *3.

The court ruled that the written agreements were not integrated. *Id.* at *3-4. "The most important factor" was "the brief nature of the agreements." *Id.* at *3. The written agreements consisted of "one page contracts" which covered "the basic terms of the agreements" and "lack[ed] many of the formal trappings of conventional commercial contracts including integration clauses." *Id.* Moreover, the agreements did not discuss certain details one would expect the contracts to cover, including "electric service, who would determine placement of the phones . . . and terms other than a brief sketch of the economic terms." *Id.*

10

The same is true here.  The PPA and DPA are one page each.  Neither contains an integration clause.  *See* ECF No. 29-2 at 2; ECF No. 29-3 at 2.  They include short lists of bulleted provisions that outline, in general terms, the design and planning work that Defendant was to do for Plaintiff.  *Id.*  Transforming a commercial space into a dog boarding, daycare, and grooming facility is a significant undertaking.  One would expect two sophisticated commercial entities to include more details about the parties' respective rights and responsibilities in carrying out that work.

But the Agreements do not contain any such details.  They entirely "lack . . . the formal trappings of conventional commercial contracts."  *Miracle Indus.*, 1992 WL 121723, at *3.  Given the "brief nature" of the agreements and lack of informative details, *see id.*, the Agreements do not appear to be "contracts complete within [themselves], couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement," *Gianni*, 126 A. at 792.  Defendant even conceded as much at oral argument on this motion when it explained that the parties always intended for Plaintiff to have significant input throughout the design process.  *See* ECF No. 40 at 9:16-10:5.  Thus, it is clear to the Court that the parties intended to leave room for decisions that gave meaning, understanding, and substance to the sparse terms in the Agreements.  *See id.*

This case is also like *Southport Teledata, Inc. v. Nova Contact Center Platforms, Inc.*, 05cv0030, 2006 WL 2540780, at *9 (E.D. Pa. Aug. 29, 2006).  In that case, the plaintiff retained the defendant to conduct data collection phone calls.  The written contract did not "provide specific data collection performance requirements."  *Id.*  However, the plaintiff sought to introduce evidence of a prior oral agreement in which the defendant purportedly promised to do specific things in those calls, including asking all questions in the scripts provided by the

plaintiff and capturing an answer to every question. *Id.* The court noted that these circumstances were peculiar because on one hand, "the parties in this action would normally and naturally include the specific duties and requirements for collecting data[.]" *Id.* (quotations omitted). But on the other hand, it was "equally as clear that the operative documents [were] completely lacking specific, definable standards other than that telemarketing is to occur." *Id.* The court ultimately decided to consider the parol evidence. *Id.* It reasoned that the oral and written agreements "do not go directly to the same subject matter"—i.e., the specific data collection responsibilities of the defendant—nor did they contradict each other. Under these circumstances, it makes sense to consider extrinsic evidence to ascertain the parties' intent. *Id.*

The same can be said of this case. One would expect the Agreements to include specific details about the timing and manner in which Defendant was expected to complete the project at large and components thereof. *See id.* But it is also clear that the PPA and DDA completely lack any "specific, definable standards" other than the basic design and planning tasks that Defendant would perform. *See id*.

For instance, the DDP provides that Defendant will supply Plaintiff with "interior design concepts to convey proposed fixtures, furnishings, and finishings." ECF No. 29-3. All that says is that Defendant will undertake certain interior design plans. It says nothing about how Defendant will do that, whether and how Plaintiff will have input in those plans and choices, or anything else specifying the course of performance. *Compare to Dugan*, 2012 WL 6194211, at *10 (finding integration where letters at issue were "comprehensive" and contained "all of the terms normally included in a contract" for the sale of that type of product, including price, quantity, means of acceptance, "and details regarding the rights and obligations of ownership").

Under these circumstances, the Court concludes that the Agreements are not final and integrated contracts between the parties. It will accordingly consider parol evidence in deciding Defendant's motion.

### 3.    The Extrinsic Evidence Proffered by Plaintiff

Here, the parol evidence that Plaintiff seeks to introduce is deposition testimony from one of Plaintiff's representatives that she informed one of Defendant's representatives that Plaintiff needed the project to be completed by August of 2023, and that Defendant's representative "assured [Plaintiff] that such timeframe was feasible." ECF No. 29 at 17 (citing ECF No. 29-9 at 87:6-89:16); *see also* ECF No. 40 at 13:2-15:3.

Plaintiff also seeks to introduce extrinsic evidence from after the Agreements were executed. Namely, deposition testimony that Plaintiff's and Defendant's representatives had "discussions . . . regarding timing of specific deliverables." ECF No. 29 at 17 (citing ECF No. 29-9 at 58:4-13, 68:7-22). Plaintiff argues that this evidence "should be used to determine whether a particular deliverable was or was not timely under the Agreements," *id.*, which Plaintiff characterizes as evidence concerning the course of performance. *See id.* In contrast, Defendant argues that these discussions should be analyzed as subsequent modifications to the Agreements. *See* ECF No. 28-1 at 14-15.

If Plaintiff is correct, then the Court can consider these discussions to ascertain the parties' intent—regardless of whether there is an ambiguity in the writing. *See Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 741 n.6 (Pa. 1978) (overturning prior cases requiring an ambiguity in the writing to consider evidence of course of performance and ruling that "course of performance is always relevant in interpreting a writing"); *see also Homeland Ins. Co. of Del. v. Devereaux Found.*, 505 F. Supp. 3d 508, 517 (E.D. Pa. 2020) ("Pennsylvania case law indicates 'course of

13

performance' can be used to interpret the terms of an existing agreement."). If Defendant is correct, then Plaintiff must show by "'clear, precise, and convincing' evidence" that the parties intended for the subsequent conversations to modify the written Agreements. *PPG Indus., Inc. v. Zurawin,* 52 F. App'x 570, 575 (3d Cir. 2002) (quoting *Nicolella v. Palmer*, 248 A.2d 20, 23 (Pa. 1968)).

Plaintiff has the better argument. "Pennsylvania law dictates that an oral statement constitutes a purported oral modification of a written contract where the oral statement and the written contract 'relate to the same subject matter, and are so interrelated that both would be executed at the same time and in the same contract.'" *Id.* (citing *Mellon Bank Corp.*, 951 F.2d at 1405). The Agreements are silent as to timing of completion of both the project at large and its various subparts. Though one would expect final and interim deadlines to be included in a commercial contract between two sophisticated entities, the Agreements clearly do not contain any of the details typical of a standard commercial contract. *See supra* at 10-11; *see also Miracle Indus.*, 1992 WL 121723, at *3. Thus, these details about project timing do not "relate to the same subject matter" nor do they conflict with the express writing. *See Mellon Bank*, 951 F.2d at 1405; *see also Southport Teledata, Inc.*, 2006 WL 2540780, at *9 (finding oral statement did not go to same subject matter where statement addressed specific details not covered in non-descript written agreement and statements did not contradict the writing). The subsequent conversations about timing of performance are therefore not "modifications" to the Agreements. *See Homeland Ins. Co.*, 505 F. Supp. 3d at 517.

Rather, the ongoing conversations between Defendant's and Plaintiff's representatives are better understood as evidence of "how the parties behave[d] under the contract." *See Sapa Extrusions, Inc. v. Lib. Mut. Ins. Co.*, 939 F.3d 243, 257 (3d Cir. 2019). This is admissible course

of performance evidence.  *Id.*  The Court will therefore consider this evidence to help "interpret the terms" of the Agreements.  *See Homeland Ins. Co.*, 505 F. Supp. 3d at 517.

Plaintiff's representative testified that there were communications between him and Defendant that made it "abundantly clear to [Defendant]" that she needed the project completed by August 2023 because that is when she needed to start paying rent at the new facility.  *See* ECF No. 29-9 at 87:17-89:8.  The representative further testified to "meetings throughout" the project's undertaking where Plaintiff would inquire "where we were at with items" including on budget and timeline.  *Id.*  Defendant denies that there were any contractual deadlines.  *See* ECF No. 28-1 at 13.

This course of performance evidence, in addition to the parol evidence discussed above, *supra* at 13, establishes a genuine dispute of material fact regarding whether there were agreed-upon deadlines for the project and whether Defendant breached by not satisfying those deadlines. This evidentiary dispute precludes summary judgment.  *See Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249).

**B.      Damages**

Defendant next argues that, should the Court find a triable issue on breach, Plaintiff's damages should be limited to $199,000—the amount owed to Defendant under the PPA and DDA.  *See* ECF No. 29-2 at 2 (PPA providing that Defendant's "total liability to [OWNER] for any and all injuries, claims, losses, expenses, damages, or claim expenses arising out of this Agreement" limits Plaintiff's recovery to the $199,000 fee it paid to Defendant under the Agreements); *see* ECF No. 29-3 at 2 (DDA "incorporat[ing] by reference the [PPA] previously in place").

Plaintiff responds that Defendant was required to raise the liability limitation provision as an affirmative defense and its failure to do so constitutes waiver. *See* ECF No. 29 at 23. It argues that Plaintiff's complaint "makes it abundantly clear that Plaintiff is seeking damages in excess of amounts paid to Defendant" but that Defendant's answer contains "no affirmative defenses." *Id.* Accordingly, this answer did not provide "any notice that Defendant intended to rely on any provision in the Agreements that purportedly limits Defendant's liability." *Id.*

Plaintiff further argues that, even if Defendant had not waived the liability limitation provision as an affirmative defense, the provision is unconscionable and unenforceable. *Id.* at 24. Plaintiff characterizes the provision as "buried in unrelated provisions" such that it would not put a reasonable party on notice that it "would restrict the party's ability to be made whole on a multi-million construction project." *Id.* Finally, Plaintiff contends that Defendant had superior bargaining power so Plaintiff "was not in a position to negotiate the terms of the Agreements." *Id.* at 25.

      1.    <u>Waiver</u>

Federal Rule of Civil Procedure 8(b)(1)(A) provides that a responsive pleading must "state in short and plain terms [the responding party's] defenses to each claim asserted against it[.]" A party generally waives an affirmative defense by failing to raise it in a responsive motion or pleading. *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). However, "there is no firm rule" precluding raising an affirmative defense later in the litigation. *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012). "Thus, affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice." *Id.*; *see also In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018) (party can raise an affirmative defense at a "pragmatically sufficient time," and "in a way that gives fair notice of that defense").

The Court is not convinced that Defendant's invocation of the liability limitation provision is an affirmative defense.  The provision is a plain term of the PPA and incorporated by reference into the DDA.  *See* ECF No. 29-2.  The applicability of the provision goes to an element of Plaintiff's prima facie case (damages).  "A matter that merely negates an element of the plaintiff's prima facie case is not an affirmative defense."  *Sterten v. Option One Mortg. Corp.*, 479 F. Supp. 2d 479, 483 (E.D. Pa. 2007), *aff'd sub nom. In re Serten*, 546 F.3d 278 (3d Cir. 2008).

Even if the liability limitation provision was an affirmative defense, Plaintiff has not demonstrated that it would be prejudiced by Defendant raising this issue now.  *See Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc.*, No. 15cv405, 2019 WL 3022346, at *11 (E.D. Pa. May 23, 2019) ("Even assuming arguendo that invoking the limitation of liability clause constitutes an affirmative defense, plaintiffs have suffered no prejudice from the fact that [defendant] asserted the defense at the summary judgment stage of the proceedings.").

It should not be a surprise to Plaintiff that Defendant would refute its claim for damages by referring to language in the Agreements.  Moreover, as Defendant points out, the provision was discussed by the parties during discovery.  *See* ECF No. 32 at 3; ECF No. 28-3 at 167-68 (Plaintiff's representative testifying about understanding of liability limitation provision during deposition); *see also* ECF No. 40 at 32:16-33:13 (Plaintiff conceding that this issue arose in discovery).  The case Plaintiff cites, *In re Frescati Shipping Company*, *Ltd.*, is inapposite.  In that case, the Third Circuit affirmed the district court's conclusion that a defendant waived an affirmative defense because it "did not raise this defense with the requisite clarity until nearly ten years after [the] litigation began[.]"  886 F.3d at 313.  That degree of delay is not present here.  Moreover, the affirmative defense raised in *Frescati* was a liability limitation contained in a

federal statute—the applicability of which would not have been necessarily obvious to the parties. *See id.* The limitation at issue was not, as is the case here, in the plain terms of the contract. The Court therefore declines to find that Defendant waived this argument.

### 2. Enforceability

"Under Pennsylvania law, clauses limiting damages in commercial settings are generally enforced." *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 262 (Pa. Super. 1997); *accord Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 829 (E.D. Pa. 2000). "The party alleging unconscionability carries the burden of proof." *DiPietro v. Glidewell Lab'ys*, 07cv1591, 2011 WL 5403568, at *4 (M.D. Pa. Nov. 8, 2011).

Plaintiff argues that the liability limitation provision is unenforceable because (1) the provision is "buried" in a footnote of the PPA and (2) Defendant had "substantially superior bargaining" power because it prepared the Agreements without input from Plaintiff. *See* ECF No. 29 at 24-25. Plaintiff's first argument is unconvincing. The PPA is a one-page document. The liability limitation provision is one line in that document that is in the same font as the rest of the text. *See* ECF No. 29-2. It was plainly conspicuous to Plaintiff.

Plaintiff's second argument is more persuasive. The relative bargaining power of the parties when negotiating the contract "is a factor in determining whether a limitation of liability clause is unconscionable." *See DiPetro*, 2011 WL 5403568, at *4 (citing *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1190, 1195-96 (Pa. Super. 1991)). Plaintiff has pointed to record evidence that Defendant had more bargaining power because it prepared the Agreements and Plaintiff was "under severe time pressure" to finish the projects. *See* ECF No. 29 at 25 (citing ECF No. 29-10 at 18:6-7, 27:10-12) (Defendant's representative testifying that he prepared the Agreements)); ECF No. 29-8 at 11 (Plaintiff's interrogatory responses stating

Plaintiff did not seek alternative bids due to time constraints on the project).  This creates a triable issue on enforceability sufficient to defeat summary judgment.  *See Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249).

### 3.    Evidence of Damages

Finally, Defendant argues that summary judgment should be granted in its favor because Plaintiff cannot establish lost profit damages with "reasonable certainty."  ECF No. 28-1 at 18. "Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, only with reasonable certainty, and evidence of damages may consist of probabilities and inferences."  *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. 1983).  Plaintiff has pointed to sufficient record evidence that a reasonable factfinder could find in its favor on damages with "reasonable certainty."  This evidence includes a detailed comparison of Plaintiff's profits and losses over the time period when it was operating at its old facility and its profits when it was finally able to operate at its new, larger facility.  *See* ECF Nos. 29-6 and 29-7).  The jury would be able to use these figures to estimate the difference between what Plaintiff actually made from August 2023 – early 2024 and what it could have made if the new facility opened in time.  There is accordingly a triable issue on damages sufficient to defeat summary judgment.  *See Anderson*, 477 U.S. at 252.

## IV.    CONCLUSION

There are triable issues concerning both disputed elements of Plaintiff's breach of contract claim.  Defendant's motion for summary judgment is therefore denied.  An appropriate Order will follow.

**BY THE COURT:**

_____
MARY KAY COSTELLO
United States District Judge
